**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4624**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KELVIN QUADE MANRICH,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Catherine C. Blake, District Judge. (1:11-cr-00122-CCB-20)

Submitted:  May 17, 2013          Decided:   June 18, 2013

Before KING, GREGORY, and DUNCAN, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

Bruce A. Johnson, Jr., LAW OFFICES OF BRUCE A. JOHNSON, JR., LLC, Bowie, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Kathleen O. Gavin, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After five days of trial testimony, Kelvin Quade Manrich, a former officer with the Baltimore Police Department ("BPD"), entered a straight guilty plea to conspiracy to obstruct, delay, and affect commerce by extortion by means of unlawfully obtaining, under color of official right, money and other property from Hernan Alexis Moreno and Edwin Javier Mejia, who jointly owned and operated Majestic Auto Repair Shop, LLC, ("Majestic"), in violation of 18 U.S.C. §§ 371, 1951(a) (2006), and three substantive counts of the same, in violation of 18 U.S.C. §§ 1951(a), 2 (2006). Manrich was sentenced to forty-one months' imprisonment and three years of supervised release.

On appeal, Manrich challenges the calculation of his advisory Guidelines range. Specifically, Manrich argues that the district court clearly erred in its application of U.S. Sentencing Guidelines Manual ("USSG") §§ 2B1.1(b)(1), 2C1.1(b)(2) (2011), in determining the monetary value reasonably foreseeable to him. For the reasons that follow, we vacate the judgment and remand this case for resentencing.

I.

As alleged in the indictment, the overarching purpose of the underlying conspiracy was to "enrich" the involved BPD officers and to "benefit" Moreno and Mejia by bribing police officers to use "their official positions and influence to cause

2

vehicles to be towed or otherwise delivered to Majestic for automobile services and repair." (J.A. 11).[*] The scheme was simple: a BPD officer would respond to the scene of a vehicle accident; the officer would encourage the vehicle owner to have Majestic tow the damaged vehicle and/or repair the damage sustained during the collision. Moreno and Mejia paid the BPD officers a "referral fee" for directing accident victims to Majestic. This fee, more appropriately called a kickback, ranged from $250 to $300 per vehicle.

The record established that Majestic would repair the damage sustained in the accident. However, for some vehicles, Majestic would also repair pre-existing damage and/or add damage to that resulting from the accident. Majestic would then submit an insurance claim reflecting these fraudulent damages.

Seventeen officers, as well as Moreno and Mejia, were ultimately arrested. Included in the record are the plea agreements and stipulated statements of facts agreed to by Officers Osvaldo Valentine, Jerry Diggs, Jr., Henry Yambo, and Leonel Rodriguez. In their stipulated statements of facts, these officers admitted to receiving the following payments from Majestic: Valentine — $14,400 in checks and an unknown amount

---

[*] Citations to the "J.A." refer to the joint appendix submitted in this case.

3

in cash; Diggs — $3550 in checks and at least $1500 in cash; Yambo — $4500, including four checks; and Rodriguez — $8450 in checks and an unknown amount in cash.

In his post-arrest statement, Manrich admitted receiving approximately $5000 in kickbacks and knowing that Valentine, Diggs, Rodriguez, and Yambo were part of the scheme. Manrich further admitted that he and Valentine split the referral fee on a few occasions.

## II.

This court reviews any criminal sentence, "whether inside, just outside, or significantly outside the Guidelines range," for reasonableness, "under a deferential abuse-of-discretion standard." United States v. King, 673 F.3d 274, 283 (4th Cir.), cert. denied, 133 S. Ct. 216 (2012); see Gall v. United States, 552 U.S. 38, 51 (2007). Of course, the first step in procedural reasonableness review is to evaluate the district court's Guidelines calculations. Gall, 552 U.S. at 51. With regard to the calculation of the Guidelines range, "we review the [sentencing] court's factual findings for clear error, its legal conclusions de novo, and unpreserved arguments for plain error." United States v. Strieper, 666 F.3d 288, 292 (4th Cir. 2012) (citations omitted).

There is no dispute that Manrich's base offense level was fourteen and that two levels were properly added for the

offense involving more than one bribe. USSG § 2C1.1(a)(1), (b)(1). It is the application of USSG § 2C1.1(b)(2) that is contested in this case. This provision provides:

> If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

USSG § 2C1.1(b)(2). The district court appears to have utilized the third enumerated measure in that the court added the amounts Majestic paid to Manrich and the four admitted co-conspirators to the amounts Majestic received for the fraudulent repairs.

Despite Manrich's argument to the contrary, we discern no error in the court's inclusion of the kickback payments received by the four acknowledged co-conspirators. Manrich pled guilty to conspiracy to commit extortion and admitted knowing that these particular officers were involved in the conspiracy. Accordingly, the kickback amounts that his co-conspirators admitted receiving were properly included in the court's relevant conduct analysis. See United States v. Offill, 666 F.3d 168, 180 (4th Cir. 2011), cert. denied, 132 S. Ct. 1936 (2012); USSG § 1B1.3(a)(1)(B). That Manrich did not know the precise number of vehicles that the other officers brought to Majestic is simply of no moment.

5

The district court next increased the value amount by adding the losses incurred by the insurance companies in paying fraudulent claims. Because those payments inured to Majestic's benefit, the district court properly included them in its calculation. See, e.g., United States v. Roussel, 705 F.3d 184, 199-200 & n.13 (5th Cir. 2013) (determining the appropriate "benefit" amount under § 2C1.1(b)(2) by looking at the aggregate benefit to each member of the conspiracy). To calculate this amount, the court relied on an exhibit proffered at sentencing that detailed a sampling of damage claims submitted by Majestic.

According to this exhibit, referred to in the district court as "Exhibit A," Majestic received approximately $120,000 for vehicle repairs made between January 2009 and February 2011. The court ruled that at least one-third of the claim amounts itemized in Exhibit A were fraudulent and thus added $40,000 to the value determination. In doing so, the court accepted the Government's contention that the value determination was at least $70,000, which corresponded with an eight-level increase pursuant to USSG § 2B1.1(b)(1)(E).

But we have found no evidentiary support in the record for the court's determination as to the percentage of fraudulent claim amounts. Although submitted by Manrich, the Government prepared Exhibit A, and nothing therein justifies the determination that one-third of each claimed amount was

6

fraudulent.  Nor did the court indicate that it was relying on trial testimony from any particular witness to substantiate this critical finding.

To be sure, the sentencing court "need only make a reasonable estimate of the loss."  USSG § 2B1.1 cmt. n.3(C); see United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003) (recognizing that the loss amount "need not be determined with precision" (internal quotation marks omitted)).  But on the record as it exists now, we have no basis of which to conclude that it is a reasonable estimate.

For these reasons, we vacate the criminal judgment as to Manrich's sentence and remand this case for resentencing in accordance with this opinion.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

VACATED AND REMANDED