**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4807**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

KELVIN QUADE MANRICH,

             Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Catherine C. Blake, District Judge. (1:11-cr-00122-CCB-20)

Submitted:  September 29, 2014        Decided:  October 7, 2014

Before KING, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Bruce A. Johnson, Jr., LAW OFFICES OF BRUCE A. JOHNSON, JR., LLC, Bowie, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Kathleen O. Gavin, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kelvin Quade Manrich, a former officer with the Baltimore Police Department ("BPD"), appeals the forty-one-month sentence imposed after we vacated his original sentence and remanded his case for resentencing. See United States v. Manrich, 529 F. App'x 322 (4th Cir. 2013) (No. 12-4624). The only issue in this appeal is whether the district court properly calculated the loss amount attributable to Manrich for sentencing purposes. See U.S. Sentencing Guidelines Manual ("USSG") § 2B1.1(b) (2011). For the reasons that follow, we affirm the amended criminal judgment.

Following five days of trial testimony, Manrich entered a straight up guilty plea to conspiracy to obstruct, delay, and affect commerce by extortion by means of unlawfully obtaining, under color of official right, money and other property from Hernan Alexis Moreno and Edwin Javier Mejia, who jointly owned and operated Majestic Auto Repair Shop, LLC, ("Majestic"), in violation of 18 U.S.C. §§ 371, 1951(a) (2012), and three substantive counts of the same, in violation of 18 U.S.C. §§ 1951(a), 2 (2012). As discussed in our prior opinion, the overarching purpose of the underlying conspiracy was to "enrich" the involved BPD officers and to "benefit" Moreno and Mejia by bribing police officers to use "their official positions and influence to cause vehicles to be towed or

2

otherwise delivered to Majestic for automobile services and repair." (J.A. 14).[1] The scheme was simple: a BPD officer would respond to the scene of a vehicle accident; the officer would encourage the vehicle owner to have Majestic tow the damaged vehicle and/or repair the damage sustained during the collision. Moreno and Mejia paid the BPD officers a "referral fee" for directing accident victims to Majestic. This fee, more appropriately called a kickback, ranged from $250 to $300 per vehicle. Majestic, in turn, would repair the damage sustained in the accident. However, for some vehicles, Majestic would also repair pre-existing damage and/or add to the damage resulting from the accident. Majestic would then submit an insurance claim for both the legitimate and fraudulent damage.

Manrich was initially assigned a base offense level of fourteen. See USSG § 2C1.1(a)(1). This was increased two levels because the offense involved more than one bribe or extortion. USSG § 2C1.1(b)(1). The probation officer then applied an eight-level increase because the foreseeable loss amount attributable to Manrich was more than $70,000 but less than $120,000. This was a specific offense characteristic

_____

[1] Citations to the "J.A." refer to the joint appendix submitted by the parties.

3

pursuant to USSG § 2C1.1(b)(2), which cross-references the loss table found in § 2B1.1(b)(1).

To substantiate the loss determination, FBI Agent Robert Guynn prepared a Loss Summary Chart, which was offered at the resentencing hearing. Although the conspiracy spanned many years and involved a substantial number of vehicles, Guynn had included only fourteen vehicles, all of which were referred to Majestic either by Manrich or by one of the four officers whose involvement in the conspiracy Manrich admittedly knew.

At the resentencing hearing, Guynn described how he compiled this chart. Specifically, Guynn explained that the data presented in the chart was culled from witness testimony from the trial and the plea agreements and stipulated statements of facts accepted by the admitted co-conspirators. Guynn also explained that he had consulted with insurance adjusters to determine what percentage of each claim was fraudulent. The insurance companies paid $63,971.95 for repairs to the fourteen selected vehicles. Of this, Guynn concluded that $48,966.96 was paid to repair fraudulent damage.[2]

---

[2] Manrich argues on appeal that Guynn did not sufficiently particularize how he determined the fraud percentage for two claims that were not 100% fraudulent. But Manrich did not raise this objection in the district court and, given Guynn's testimony, we discern no plain error in the court's acceptance of the Loss Summary Chart as to these findings. See United
(Continued)

The sentencing court "need only make a reasonable estimate of the loss." USSG § 2B1.1 cmt. n.3(C); see United States v. Keita, 742 F.3d 184, 192 (4th Cir. 2014) (recognizing that the loss amount "need not be determined with precision" (internal quotation marks omitted)). Added to the nearly $49,000 in fraudulent insurance claims are the kickbacks received by Manrich and his acknowledged co-conspirators, which total, at minimum, $37,000.[3] The record as supplemented thus amply demonstrates the basis for the court's determination of a loss amount of at least $70,000.

Manrich advances three arguments to undermine this finding, two of which attack Hernan Moreno's testimony at the resentencing hearing. But any concerns regarding Moreno's credibility or lack of specific recollection are ameliorated by Guynn's testimony, which established a proper foundation for the Loss Summary Chart.

_____

States v. Hamilton, 701 F.3d 404, 410 (4th Cir. 2012), cert. denied, 133 S. Ct. 1838 (2013).

[3] As the Government aptly points out, we resolved the issue of the foreseeability of these payments in Manrich's first appeal, see Manrich, 529 F. App'x at 325, and will not revisit the issue here. See MacDonald v. Moose, 710 F.3d 154, 161 n.10 (4th Cir.) ("[T]he doctrine of law of the case restricts a court to legal decisions it has made on the same issues in the same case."), cert. denied, 134 S. Ct. 200 (2013).

5

Finally, Manrich asserts that the fraudulently obtained insurance proceeds paid to two of his co-conspirators, Jerry Diggs and Leonel Rodriguez, were improperly included in the loss amount. Guynn's determination that both of these claims were 100% fraudulent is consistent with the plea agreements entered into by these co-conspirators. On this record and given our foreseeability ruling in Manrich's first appeal, see Manrich, 529 F. App'x at 325, there is no error in finding these amounts were reasonably foreseeable to Manrich.[4]

For the foregoing reasons, we hold that the Government satisfied its burden of proving a loss amount between $70,000 and $120,000, which supported the eight-level increase in Manrich's offense level. As this is the only issue in dispute, we affirm the amended criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately

---

[4] For the first time on appeal, Manrich argues that the $15,215 paid to Rodriguez should be excluded from the loss determination because the fraudulent conduct underlying that claim occurred prior to Manrich's entrance into the conspiracy. But even if this entire amount were excluded, the combined loss amount would still exceed $70,000. Thus, because Manrich cannot establish any prejudice resulting from including this amount in the loss determination, he does not satisfy the rigorous plain error standard applicable to this newly raised claim. See United States v. Byers, 649 F.3d 197, 213 (4th Cir. 2011) ("Plain error review is strictly circumscribed and meeting all four prongs is difficult, as it should be." (internal quotation marks and alteration omitted)).

presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED