**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-6452**

ADAM DARRICK TOGHILL,

        Petitioner – Appellant,

v.

HAROLD W. CLARKE, Director, Dept. of Corrections,

        Respondent – Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Michael F. Urbanski, Chief District Judge.  (7:15-cv-00119-MFU-RSB)

Argued:  September 14, 2017                  Decided:  December 15, 2017

Before WILKINSON, TRAXLER, and AGEE, Circuit Judges.

Affirmed by published opinion.  Judge Traxler wrote the opinion in which Judge Wilkinson and Judge Agee joined.

**ARGUED:** Gregory Dolin, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant.  Matthew Robert McGuire, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Meghan Ellis Brennan, Stuart Goldberg, Jasna McElrath, Third Year Law Students, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant.  Mark R. Herring, Attorney General of Virginia, Stuart A. Raphael, Solicitor General, Trevor S. Cox, Deputy Solicitor General, Eugene P. Murphy, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

TRAXLER, Circuit Judge:

Petitioner Adam Darrick Toghill, a Virginia inmate, appeals the district court's denial of his habeas petition under 28 U.S.C. § 2254(d), in which he challenges his state court conviction for computer solicitation of acts of sodomy from a minor under the age of 15, in violation of Va. Code Ann. § 18.2-374.3(C)(3) (2007). He argues that his conviction violates his substantive due process rights under the Fourteenth Amendment to the United States Constitution, and that the Supreme Court of Virginia's rejection of his claim was contrary to or an unreasonable application of the United States Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003). For the following reasons, we affirm.

I.

In March 2011, Toghill, who was 32 years old, engaged in an 80-minute email exchange with "Becca" Flynn, a 13-year-old girl who had posted an advertisement in the "miscellaneous romance" section of Craigslist. J.A. 276 (internal quotation marks omitted). After they exchanged photographs, "Toghill repeatedly expressed his desire to engage in oral sex with her, questioned her about her sexual experience, and explored potential locations where they could meet." *Id.* In actuality, "Becca" was Louisa County, Virginia, Deputy Sheriff Patrick Siewert, who was posing as a child as part of his work with the Internet Crimes Against Children Taskforce.

Virginia Code § 18.2-374.3 generally prohibits the "[u]se of communications systems to facilitate certain offenses involving children." Toghill was charged specifically under Va. Code § 18.2-374.3(C)(3), which, at the time of his offense, provided as follows:

2

It shall be unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child less than 15 years of age to knowingly and intentionally . . . [p]ropose to such child the performance of *an act of sexual intercourse or any act constituting an offense under § 18.2-361*.

*Id.* (emphasis added).  Va. Code Ann. § 18.2-361(A) (2005), in turn, prohibited "carnally know[ing] in any manner any brute animal, or carnally know[ing] any male or female person by the anus or by or with the mouth," including "voluntarily submit[ting] to such carnal knowledge."  Toghill was convicted by a jury and sentenced to five years' imprisonment.[1]

While Toghill's direct appeal was pending before the Court of Appeals of Virginia, this court issued its decision in *MacDonald v. Moose*, 710 F.3d 154 (4th Cir. 2013), granting habeas relief to a Virginia inmate who had been convicted of criminal solicitation of a 17-year-old minor to commit a felony, *see* Va. Code Ann. § 18.2-29 (2002), namely sodomy under Va. Code § 18.2-361(A), based upon the substantive Due Process Clause and the Supreme Court's decision in *Lawrence*.  Toghill has since claimed that his conviction for proposing "the performance of an . . . act constituting an offense under § 18.2-361," to a "child less than 15 years of age," in violation of § 18.2-374.3(C)(3), violates his due process rights as well.  Both the Court of Appeals of Virginia and the Supreme Court of Virginia rejected Toghill's challenge and affirmed his conviction.  *See Toghill v.*

---

[1] Va. Code § 18.2-374.3(C) was amended in 2013 and 2014.  Va. Code § 18.2-361 was amended in 2014.  Unless otherwise indicated, references to these statutes pertain to the earlier versions that were in effect when Toghill was charged with his offense.

3

*Commonwealth,* 768 S.E.2d 674 (Va. 2015); *Toghill v. Commonwealth*, No. 2230-12-2, 2014 WL 545728 (Va. Ct. App. Feb. 11, 2014). Toghill then filed this petition for habeas relief under 28 U.S.C. § 2254. The district court dismissed the claim, but granted a certificate of appealability.

II.

A.

In *Lawrence v. Texas*, the United States Supreme Court was presented with a challenge to the constitutionality of a Texas statute that criminalized homosexual sodomy. The Court held that the liberty interests protected by the Due Process Clause of the Fourteenth Amendment prohibit states from criminalizing such sexual conduct between consenting adults in private. *See Lawrence,* 539 U.S. at 578. In doing so, the Court overruled its prior decision in *Bowers v. Hardwick,* 478 U.S. 186 (1986), which had upheld a Georgia statute that criminalized all sodomy against the same constitutional challenge. *See id.* The Supreme Court, however, was careful to point out the scope of its ruling, noting that the case did "not involve minors," "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused," or "public conduct or prostitution." *Lawrence*, 539 U.S. at 578. Rather, it involved the convictions of "two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle" in the privacy of the home. *Id.*

B.

Prior to the Fourth Circuit's decision in *Moose*, the Virginia appellate courts considered two cases involving the effect of *Lawrence* upon a Virginia defendant's

4

convictions for sodomy under Va. Code § 18.2-361(A), (the "anti-sodomy statute"), and

for solicitation of sodomy under Va. Code §§ 18.2-29 and 18.2-361(A). The defendant in

both cases was the same—William Scott *McDonald* a/k/a William Scott *MacDonald*.[2]

In the first case, *McDonald v. Commonwealth*, 645 S.E.2d 918 (Va. 2007),

McDonald challenged his convictions for four counts of sodomy under Va. Code § 18.2-

361(A)—all of which involved minors under the age of 18 when McDonald was between

45 and 47 years old. *See id.* at 919. McDonald argued that because the anti-sodomy statute

had no age restriction, the court should borrow the age restrictions from certain other

minor-specific criminal statutes in Virginia, and set the age of consent at 15 years of age.

*See id.* at 923. Under this construction of the anti-sodomy statute, McDonald claimed that

his victims were of the age of consent and, therefore, that the anti-sodomy statute had been

unconstitutionally applied to him under *Lawrence*. *See id.* The Supreme Court of Virginia

disagreed, holding as follows:

> The only issue preserved at the trial court and presented to this Court
> is an as-applied constitutional challenge to the sodomy statute. McDonald's
> statutory construction argument is faulty and furthermore, it misses the real
> issue. The victims in this case were minors, defined by the Code of Virginia
> as persons under the age of eighteen. See Code § 1-207. *Nothing in*
> *Lawrence . . . prohibits the application of the sodomy statute to conduct*
> *between adults and minors.*

---

[2] The cases involving the sodomy convictions under Va. Code § 18.2-361(A), are titled under the *"McDonald"* spelling of the defendant's last name, whereas the case involving the solicitation of sodomy convictions under Va. Code §§ 18.2-29 and 18.2-361(A), are titled under the *"MacDonald"* spelling of the defendant's last name. We refer to the Fourth Circuit decision, which involved the defendant's successful petition for habeas relief from the solicitation conviction in the second case, as the *Moose* decision.

*Id.* at 924 (emphasis added); *see id.* (noting that "[t]he Court in *Lawrence* was explicit in its declaration of the scope of its opinion: 'The present case does not involve minors.'" (quoting *Lawrence*, 539 U.S. at 578)). Although McDonald also raised a facial challenge to the anti-sodomy statute, the Supreme Court of Virginia explicitly refused to consider it because McDonald failed to raise it before the trial court. *See id.* at 921.[3]

In the second case, *MacDonald v. Commonwealth*, No. 1939-05-02, 2007 WL 43635, at *1 (Va. Ct. App. Jan. 9, 2007), the Court of Appeals of Virginia considered MacDonald's appeal from his conviction for solicitation to commit a felony under Va. Code § 18.2-29, namely acts of sodomy prohibited by Va. Code § 18.2-361(A). Again, MacDonald argued that his 17-year-old victim should be deemed to be of the age of consent under Virginia law and, therefore, that the anti-sodomy statute was being unconstitutionally applied to him under *Lawrence*. In addition, MacDonald timely asserted a facial challenge to the anti-sodomy statute. The Court of Appeals of Virginia rejected MacDonald's as-applied challenge based upon the age of consent, and held that MacDonald lacked standing to assert a facial challenge to the anti-sodomy statute because it was not being unconstitutionally applied to him. *See id.* (citing *McDonald v. Commonwealth*, 630 S.E.2d 754, 756-57 (Va. Ct. App. 2006)); *see also County Court of Ulster Cty. v. Allen*, 442 U.S. 140, 154-55 (1979) ("A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no

---

[3] In federal habeas proceedings, the district court denied McDonald's § 2254 petition, *see MacDonald v. Johnson*, No. 1:08cv781, 2009 WL 3254444 (E.D. Va. Oct. 9, 2009), and we denied a certificate of appealability, *see McDonald v. Johnson*, 384 Fed. App'x 273 (4th Cir. 2010).

constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."). The Supreme Court of Virginia declined review.

C.

This court's decision in *Moose* arose out of MacDonald's habeas challenge to the Court of Appeals of Virginia's decision to affirm his conviction for solicitation of sodomy under Va. Code §§ 18.2-29 and 18.2-361(A). The *Moose* court reversed the district court's denial of relief, and held that MacDonald was entitled to habeas relief from his solicitation-of-sodomy conviction because the Virginia court's "standing determination . . . was contrary to and involved an unreasonable application of clearly established federal law, as determined by the Supreme Court." *Moose*, 710 F.3d at 162.

First, the *Moose* court held that, because the Supreme Court in *Lawrence* "recognized that the facial due process challenge in *Bowers* was wrongly decided," and Virginia's anti-sodomy statute was "materially indistinguishable from the anti-sodomy provision" in *Bowers,* Virginia's statute likewise did "not survive the *Lawrence* decision." *Id.* at 163.

Second, the *Moose* court turned to the appropriate remedy under the principles of *Ayotte v. Planned Parenthood of Northern New England,* 546 U.S. 320 (2006). In *Ayotte*, the United States Supreme Court held that "when confronting a constitutional flaw in a statute," federal courts should "try to limit the solution to the problem" by "enjoin[ing] only the unconstitutional applications of [the] statute while leaving the other applications in force." *Id.* at 328-29. "[T]he normal rule is that partial, rather than facial, invalidation,

7

is the required course, such that [the] statute may be declared invalid to the extent that it reaches too far, but otherwise left intact." *Id.* at 329 (internal quotation marks and alteration omitted). In doing so, however, federal courts must also remain "mindful that our constitutional mandate and institutional competence are limited" and that we should "restrain ourselves from rewriting state law to conform it to constitutional requirements even as we strive to salvage it." *Id.* (internal quotation marks and alteration omitted).

The *Moose* court agreed that Virginia's anti-sodomy statute had constitutional applications, and that there was nothing in *Lawrence* that would prohibit a state from enacting a statute "criminaliz[ing] sodomy between an adult and a minor." *Moose*, 710 F.3d at 164. However, the court held that it could not judicially remedy the statute without "run[ning] afoul of the Supreme Court's decision in *Ayotte,*" *id.* at 165-66, because "the anti-sodomy provision, like the statute in *Lawrence*, applie[d] without limits," and "d[id] not mention the word 'minor,' nor . . . remotely suggest that the regulation of sexual relations between adults and children had anything to do with its enactment," *id.* at 165. Accordingly, the statute, as written, was facially unconstitutional. *See id.* at 166 ("[T]he "anti-sodomy provision, prohibiting sodomy between two persons *without any qualification*, is facially unconstitutional" under the Due Process Clause.) (emphasis added).

And, finally, the *Moose* court held that, because the anti-sodomy provision was facially unconstitutional, it was "unconstitutional when applied to any person," *id.* at 162, and "the *Ulster County* decision d[id] not operate to deny standing for MacDonald to pursue a facial due process challenge to the anti-sodomy provision." *Id.* at 161.

8

III.

In his appeal to the Supreme Court of Virginia, Toghill asked the court to follow

our decision in *Moose* and likewise declare the anti-sodomy statute to be facially

unconstitutional under *Lawrence* and incapable of a narrowing construction that would

save it in its constitutional applications.[4]  Additionally, Toghill asked the court to extend

the holding in *Moose* to his conviction for proposing acts of sodomy to a child under the

age of 15 in violation of § 18.2-374(C)(3), because § 18.2-374(C)(3) prohibits adults from

proposing "an act of sexual intercourse *or any act constituting an offense under § 18.2-*

*361*." *Id.* (emphasis added).

After determining that it would allow Toghill to challenge the constitutionality of

his conviction under § 18.2-374.3(C)(3) based upon *Lawrence*,[5] the Supreme Court of

---

[4]   Toghill acknowledged that the Supreme Court of Virginia was not bound by our decision in *Moose*, but nonetheless asked the court to follow that decision. *See Toghill v. Commonwealth*, 768 S.E.2d 674, 677 (Va. 2015) ("While this Court considers Fourth Circuit decisions as persuasive authority, such decisions are not binding precedent for decisions of this Court.") (citing *Lockhart v. Fretwell*, 506 U.S. 364, 376 (1993) (Thomas, J., concurring) ("[N]either federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."); *Owsley v. Peyton*, 352 F.2d 804, 805 (4th Cir. 1965) (denying that a Fourth Circuit decision alters existing Virginia law and acknowledging that "[t]hough state courts may for policy reasons follow the decisions of the Court of Appeals whose circuit includes their state, . . . they are not obligated to do so"); *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1076 (7th Cir. 1970) ("[B]ecause lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts."). Toghill likewise acknowledges in this appeal that the Supreme Court of Virginia was not bound by the Fourth Circuit's decision in *Moose*.

[5] Although Toghill had failed to raise his due process challenge at trial, a majority of the Supreme Court of Virginia held "that the conflict created by the Fourth Circuit's subsequent opinion" in *Moose* was "good cause under [Va.] Rule 5:25 to consider the error

9

Virginia agreed to "examine whether, under [its] jurisprudence, Toghill's conviction [was] invalid premised on the theory that Code § 18.2-361(A) is *facially* unconstitutional as a result of the Supreme Court's ruling in *Lawrence*." *Toghill*, 768 S.E.2d at 677 (emphasis added). Its decision to reject the constitutional challenge and affirm Toghill's conviction was two-fold.

First, the Supreme Court of Virginia stood by its earlier view that "'[n]othing in *Lawrence* prohibits the application of the sodomy statute to conduct between adults and minors.'" *Id.* at 679 (alteration omitted) (quoting *McDonald*, 645 S.E.2d at 924)).

> We held in *McDonald*, 645 S.E.2d at 924, and we reaffirm this day that the Supreme Court's decision in *Lawrence* did not prevent Code § 18.2-361(A) from being constitutional and enforceable as applied to sodomy between adults and minors. This Court recognized then and recognizes in this case that "[t]he Court in *Lawrence* was explicit in its declaration of the scope of the opinion: 'The present case does not involve minors.'"

*Id.* (quoting *Lawrence*, 539 U.S. at 578)). Accordingly, the court held that the anti-sodomy statute "was constitutional as applied to Toghill" and that "Toghill therefore [did] not have standing to successfully assert a facial constitutional challenge to" the anti-sodomy statute." *Id.*

In doing so, the Supreme Court of Virginia declined to follow the view of the majority in *Moose* that "the Supreme Court in *Lawrence* signaled that sodomy statutes were facially unconstitutional because it overturned *Bowers*," *id.*, and instead "concur[red] with the sentiment expressed in Judge Diaz's dissent to the *Moose* decision that although the

_____

alleged by Toghill regarding the constitutionality of Code § 18.2-361(A)." *Toghill*, 768 S.E.2d at 677.

10

Court in *Lawrence* overturned *Bowers*, to infer that *Lawrence* intended sodomy statutes to be facially invalid from this factor would be a logical 'bridge too far,'" *id.* at 679 n.4 (quoting *Moose*, 710 F.3d at 169 (Diaz, J., dissenting)).

Second, the Supreme Court of Virginia directly confronted Toghill's facial challenge to the anti-sodomy statute and the question of whether, under *its* jurisprudence, the statute should "be totally invalidated" in all of its applications because it was "unconstitutional only in certain applications." *Id.* at 680. Consistent with its obligation to "narrowly construe a statute where such a construction is reasonable and avoids a constitutional infirmity," *Virginia Soc'y for Human Life, Inc. v. Caldwell*, 500 S.E.2d 814, 816-17 (Va. 1998), the *Toghill* court adopted an authoritative, narrowing construction of the anti-sodomy statute so as to save it from total invalidation, *see Toghill*, 768 S.E.2d at 681.

> In accordance with the *Lawrence* decision, Code § 18.2-361(A) cannot criminalize private, noncommercial sodomy between consenting adults, *but it can continue to regulate other forms of sodomy, such as sodomy involving children, forcible sodomy, prostitution involving sodomy and sodomy in public. The easy to articulate remedy is that Code § 18.2-361(A) is invalid to the extent its provisions apply to private, noncommercial and consensual sodomy involving only adults*.

*Id.* (emphasis added); *see also Caldwell*, 500 S.E.2d at 817 n.3 ("While an ambiguity of language may serve as the basis for rejecting an unconstitutional interpretation of a statute in favor of one that survives constitutional scrutiny, a finding of ambiguity is not a prerequisite for applying a narrowing construction to preserve a statute's constitutionality. To the contrary, we may construe the plain language of a statute to have limited application

11

if such a construction will tailor the statute to a constitutional fit.") (internal citation omitted).

Thus, in *Toghill*, the Supreme Court of Virginia confronted, for the first time, a facial challenge to the anti-sodomy statute, considered the *Ayotte* framework that governed our review in *Moose*, as well as its own jurisprudence in *Caldwell*, and held "that it is proper to apply the 'normal rule' by prohibiting those applications of Code § 18.2-361(A) that are unconstitutional and leaving the constitutional applications of Code § 18.2-361(A) to be enforced." *Id.* at 682. "This remedy," the court pointed out, was the proper "exercise in judicial restraint because it allow[ed] the constitutional portions of a statute passed by the General Assembly to remain in effect and reflect[ed] the legislative preferences exhibited by the Code and the subsequent acts of the General Assembly." *Id.* In particular, the Supreme Court of Virginia relied upon several post-*Moose* acts of the Virginia General Assembly that were passed "to ensure that sodomy with a minor or solicitation of sodomy with a minor would be a crime." *Id.* at 681. "Currently, the Code of Virginia criminalizes sodomy involving adults and minors in numerous ways and thus shows clearly that our upholding convictions under the instant version of Code § 18.2-361(A) for offenses involving children is consistent with legislative intent." *Id.*[6] It is this determination of the Supreme Court of Virginia that we review in this appeal.

---

[6] One such statute, the court pointed out, was the statute of conviction in this case, Va. Code § 18.2-374.3(C)(3), which was amended to prohibit an adult from using "a communications system to '[p]ropose to [a minor under 15 years of age] the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus.'" *Toghill*, 768 S.E.2d at 682 (quoting Va. Code § 18.2-374.3 (C)(3) (2014)).

12

IV.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief to a state prisoner only if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*," 28 U.S.C. § 2254(d)(1) (emphasis added), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  Toghill does not claim that the Supreme Court of Virginia's decision in his case was factually unreasonable.  Rather, he argues that the Supreme Court of Virginia's rejection of his substantive due process claim was contrary to and an unreasonable application of the Supreme Court's decision in *Lawrence,* as interpreted by our court in *Moose.*

The AEDPA standard "serves important interests of federalism and comity" and it "is intentionally difficult to meet."  *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks omitted).  To obtain relief, the state prisoner "is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "The reasons for this approach are familiar.  Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."  *Harrington*, 562 U.S. at 103 (internal quotation marks omitted).  "It disturbs the State's

13

significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* (internal quotation marks omitted).

Accordingly, while we are informed by the decision in *Moose*, the question before us is not whether the Supreme Court of Virginia's decision to affirm Toghill's conviction under Va. Code § 18.2-374(C)(3), based upon its reference to Va. Code § 18.2-361(A), is contrary to or an unreasonable application of the *Moose* decision, nor whether we would construe the statutes at issue in the manner that it did. The question is whether the Supreme Court of Virginia's decision to uphold Toghill's conviction under its construction of the state statutes at issue was contrary to or an unreasonable application of the Supreme Court's decision in *Lawrence*. *See Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) ("[I]t is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying the AEDPA standard of review.").

V.

Toghill argues that the Supreme Court of Virginia's decision to uphold his conviction for computer solicitation of a minor under Va. Code § 18.2-374.3(C)(3) is contrary to or an unreasonable application of *Lawrence*, because it is indistinguishable from MacDonald's conviction for solicitation of a felony under Va. Code § 18.2-29, *i.e.*, sodomy criminalized under Virginia's anti-sodomy statute. More specifically, he contends that both convictions were "predicated" upon the anti-sodomy statute that this court declared facially invalid in *Moose*, and that we are therefore equally bound to grant him relief from his conviction. We disagree.

14

A.

First, there are important differences between the Virginia state court decision that we reviewed in *Moose* and the state court decision that we review in this case.

"It is well settled that federal courts have the power to adopt narrowing constructions of federal legislation. Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is *fairly possible*." *Boos v. Barry*, 485 U.S. 312, 330-31 (1988) (emphasis added). However, "federal courts are *without* power to adopt a narrowing construction of a state statute unless such a construction is *reasonable and readily apparent*." *Id.* at 330 (emphasis added); *see also United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 369 (1971) (noting that while federal courts have the power to give federal statutes an "authoritative construction," "we lack jurisdiction authoritatively to construe state legislation"); *Virginia Soc'y for Human Life, Inc. v. Caldwell*, 152 F.3d 268, 270 (4th Cir. 1988) (same).

The distinction is an important one. When a state statute has unconstitutional applications and has *not* been given a narrowing construction by the state court that saves it from those applications, federal courts "must be careful not to encroach upon the domain of a state legislature by rewriting a law to conform it to constitutional requirements." *Legend Night Club v. Miller*, 637 F.3d 291, 301 (4th Cir. 2011) (internal quotation marks and alteration omitted); *see also Ayotte*, 546 U.S. at 329. "[N]arrowing constructions are only appropriate when the text or other source of congressional intent identifies a clear line that a court could draw." *Legend*, 637 F.3d at 301 (internal quotations marks omitted); *see also Moose*, 710 F.3d at 166.

15

In *Moose*, the court held that it could not adopt a narrowing construction to save Virginia's anti-sodomy statute under the principles set forth in *Ayotte* because it would require undue "meddling" into state legislative matters. *Moose*, 710 F.3d at 166. This was because the anti-sodomy provision, as passed by the Virginia General Assembly, "applie[d] without limits," "d[id] not mention the word 'minor,' nor . . . remotely suggest that the regulation of sexual relations between adults and children had anything to do with its enactment." *Id.* at 165. In these circumstances, the court held, "a judicial reformation of the anti-sodomy provision to criminalize MacDonald's conduct . . ., and to do so in harmony with *Lawrence*, require[d] a drastic action that r[an] afoul of the Supreme Court's decision in *Ayotte*." *Moose,* 710 F.3d at 165-66.

However, prior to *Moose*, the Supreme Court of Virginia had only considered as-applied challenges to the anti-sodomy statute, and held, based upon its view of the scope of the opinion in *Lawrence*, that the Due Process Clause did not prohibit the application of the anti-sodomy statutes to the conduct in that case, which was only between adults and minors. *See Toghill*, 768 S.E.2d at 679; *McDonald*, 645 S.E.2d at 924. It was of the view that *Lawrence* had only invalidated the convictions of two consenting adults who had engaged in the criminalized conduct in private, as violative of their due process rights. *See id.* Thus, the Supreme Court of Virginia never directly confronted the question of whether it should adopt an authoritative, narrowing construction of the anti-sodomy statute, under its jurisprudence, in order to judicially remedy the statute and save it in its constitutional applications. Simply put, there had been no need to do so in the as-applied challenge before it.

16

That circumstance—that is, the need to examine a remedy to the statute to preserve its constitutional application—had changed when the Supreme Court of Virginia heard Toghill's appeal. Although the Supreme Court of Virginia stood by its earlier view that *Lawrence* did not prohibit application of the anti-sodomy statute to conduct between adults and minors in the first instance, *see Toghill*, 768 S.E.2d at 679,[7] it also explicitly considered the facial challenge to § 18.2-361. In doing so, the court narrowed the anti-sodomy statute under its own jurisprudence to authoritatively remedy any constitutional infirmity and prohibit convictions that might run afoul of the Due Process Clause as interpreted by the Supreme Court in *Lawrence*, *see Toghill*, 768 S.E.2d at 681.[8] This was plainly within its power and prerogative.

---

[7] We note that, had the Supreme Court of Virginia stopped there, it likely would have set up an intolerable conflict between our court and theirs, at least insofar as we differed as to the scope of the *Lawrence* decision and the question of whether Virginia's convictions for sodomy and solicitation of sodomy of minors under Va. Code §§ 18.2-361(A) and 18.2-29 could survive that decision. Because the Supreme Court of Virginia was not bound by the decision in *Moose*, it would continue to affirm such convictions against due process challenges if the victims were minors—as well as when the criminal conduct involved prostitution, public sodomy, or victims who could not or did not consent—only to have us grant habeas relief to the same Virginia prisoners based upon our contrary view, unless and until *Moose* was overruled by an *en banc* court in this circuit or the United States Supreme Court. Fortunately, and perhaps in recognition of this inevitable conflict, the Supreme Court of Virginia did not stop there.

[8] Although the court clearly considered the *Ayotte* factors that had governed our review in *Moose*, *see Toghill*, 768 S.E.2d at 681-82, Toghill does not dispute that the *Ayotte* framework only applies when federal courts are tasked with determining whether a state statute, which has constitutional and unconstitutional applications, should be totally invalidated.

17

Federal courts "have long respected the State Supreme Courts' ability to narrow state statutes so as to limit the statute's scope to unprotected conduct." *Osborne v. Ohio*, 495 U.S. 103, 120 (1990). This is because "[o]nly [state] courts can supply the requisite construction" of a state statute. *Gooding v. Wilson,* 405 U.S. 518, 520 (1972); *Thirty-Seven (37) Photographs*, 402 U.S. at 369; *Caldwell*, 152 F.3d at 270. And when "construing [the state law], we are bound by the construction given to it by [the state] court." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 381 (1992); *see also Posadas de P.R. Assocs. v. Tourism Co.*, 478 U.S. 328, 339 (1986) ("[I]n reviewing the facial constitutionality of [a] challenged [state] statute [or] regulation[], we must abide by the narrowing constructions announced by the [state] Court."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law, and that we are bound by their constructions except in extreme circumstances not present here." (internal citations omitted)). [9]

---

[9] Indeed, in some circumstances, the Supreme Court has indicated that the better course is to *seek* an authoritative, narrowing construction from the state supreme court *before* ruling upon the constitutionality of a state statute that has constitutional and unconstitutional applications. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 395-96 (1988) (holding that "where it appears the State will decline to defend a statute if it is read one way and where the nature and substance of plaintiffs' constitutional challenge is drastically altered if the statute is read another way, it is essential that we have the benefit of the law's authoritative construction from the Virginia Supreme Court" via the certification procedure); *see also Bellotti v. Baird*, 428 U.S. 132, 145-51 (1976) (remanding with instructions to certify questions pertaining to construction of a state statute that was susceptible to multiple interpretations, one of which would avoid or substantially modify a federal constitutional challenge); *Virginia Soc'y for Human Life, Inc. v. Caldwell*, 152 F.3d 268, 269 (4th Cir. 1998) (noting the district court's decision to seek certification prior to confronting the constitutional question at hand).

Thus, where, the state court *has* provided an authoritative, narrowing construction of a state statute, the "federal court *must* . . . consider [the] limiting construction that a state court . . . has proffered" when evaluating a facial challenge. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982) (internal quotation marks omitted); *see also Martin v. Lloyd*, 700 F.3d 132, 136 (4th Cir. 2012) (same). Moreover, we are bound to accept the state supreme court's construction "as if written into the statutes themselves." *Hebert v. Louisiana*, 272 U.S. 312, 317 (1926). The state court's "construction fixes the meaning of the statute," "put[ting] the[] words in the statute as definitively as if it had been so amended by the legislature." *Winters v. New York*, 333 U.S. 507, 514 (1948) (citing *Hebert*, 272 U.S. at 317).

The Supreme Court of Virginia has now done just that. It has adopted an authoritative, narrowing construction of the anti-sodomy statute that saves it from total invalidation, by limiting it to its constitutional applications under *Lawrence—* "sodomy involving children, forcible sodomy, prostitution involving sodomy and sodomy in public." *Toghill*, 768 S.E.2d at 681. And this interpretation by the Supreme Court of Virginia "puts these words in the statute as definitively as if it had been so amended by the legislature." *Winters*, 333 U.S. at 514.

Nor does it matter for purposes of this case that the narrowing construction occurred *after* this court in *Moose* declared the anti-sodomy statute to be facially invalid under *Lawrence* and *Ayotte*. As noted above, the court in *Moose* did not have the benefit of the Supreme Court of Virginia's authoritative, narrowing construction at the time that it considered the remedy available under *Ayotte*. Moreover, the United States Supreme Court

19

"ha[s] repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see also Maynard v. Cartwright*, 486 U.S. 356, 365 (1988) (noting that the significance of state court decisions restricting the application of a statute *after* it had been declared unconstitutionally vague by a federal circuit court of appeals is "a matter for the state courts to decide in the first instance"); *cf. Erznoznik v. City of Jacksonville*, 422 U.S. 205, 215-17 (1975) (declining to save a city ordinance from its unconstitutional scope and invalidating the ordinance on its face where "the state courts were presented with the [constitutional] challenge [and] made no effort to restrict its application" to unprotected conduct, and, therefore, "there [was] no reason to assume that the ordinance can or will be decisively narrowed" by the state court).

In addition, the "statute as construed may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendan[t]." *Osborne v. Ohio*, 495 U.S. 103, 115 (1990) (internal quotation marks omitted).  At the time of Toghill's conviction, Va. Code § 18.2-361(A) plainly prohibited sodomy between an adult and a minor, and § 18.2-374.3(C)(3) plainly prohibited an adult from soliciting sodomy from a minor via communications systems, including computers and the internet. Clearly, Toghill was on notice that his actions violated state law.  Moreover, *Lawrence* had made clear its holding did not apply to cases involving "minors," "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused," or "public conduct or prostitution." *Lawrence*, 539 U.S. at 578.

20

To conclude, this panel is informed by the decision in *Moose*. But we, unlike the panel in *Moose*, are also bound by the Supreme Court of Virginia's post-*Moose* authoritative, narrowing construction of the anti-sodomy statute, and we are now limited to considering whether the statute, as construed by the state court, is still facially unconstitutional. *See R.A.V.*, 505 U.S. at 381; *see also Hebert*, 272 U.S. at 317 (noting that, where a state supreme court has construed the statute, "[a]ll that [is] open in this Court under the due process clause is whether the State had power to impose the penalty fixed by the statutes as thus construed"). Clearly, Virginia's anti-sodomy statute, as authoritatively construed by the Supreme Court of Virginia, does not criminalize conduct that *Lawrence* declared to be protected by the liberty interests guaranteed by the Due Process Clause, and it is, therefore, not facially unconstitutional. And we cannot say that the Supreme Court of Virginia's decision to adopt this narrowing construction, under its jurisprudence, was contrary to or an unreasonable application of applicable Supreme Court precedent.[10]

## B.

Second, there are also important differences between the statutes of conviction involved in *Moose* and the statute of conviction involved in this case.

---

[10] In this regard, we note that the Supreme Court of Georgia, in *Watson v. State*, 750 S.E.2d 143 (Ga. 2013), issued a similar decision to limit a solicitation statute after our decision was issued in *Moose*. It reaffirmed its pre-*Lawrence* holding that the Georgia sodomy statute is constitutional under the Due Process Clause when "construed in a limited manner, so as not to criminalize 'private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent,'" *id.* at 145 (quoting *Powell v. State*, 510 S.E.2d 18, 26 (Ga. 1998)), and extended that holding to the defendant's First Amendment challenge to the solicitation-of-sodomy statute, *see id.* at 146 & n.2.

21

"Under Code § 18.2-374.3(C), a defendant is guilty of illegally using a communication system if he contacts 'any person he knows or has reason to believe is a child less than 15 years of age' with lascivious intent for the purpose of soliciting that person's involvement in any of several sexual encounters." *Grafmuller v. Commonwealth*, 698 S.E.2d 276, 278 (Va. Ct. App. 2010) (quoting Va. Code § 18.2-374.3(C)). "[T]he General Assembly, by enacting this statute, clearly intended to protect children from people who would take advantage of them *before* the perpetrator could commit a sexual assault on an actual child." *Id.* at 280; *see also Colbert v. Commonwealth*, 624 S.E.2d 108, 112-13 (Va. Ct. App. 2006) (noting that the provisions of what is now Code § 18.2-374.3(C) fall expressly within the legislature's purpose of "protecting children from sex offenders").

As noted above, the *Moose* court felt constrained by the principles of *Ayotte* from providing a limiting construction to Va. Code § 18.2-361(A) because the statute, on its face, prohibited sodomy between consenting adults "without limits," "d[id] not mention the word 'minor,' nor . . . remotely suggest that the regulation of sexual relations between adults and children had anything to do with its enactment." *Moore*, 710 F.3d at 165. Not so with Va. Code § 18.2-374.3(C). There can be no doubt that the Virginia General Assembly's intent, when it enacted this and other minor-specific statutes, was to criminalize the sexual exploitation of children by adults.

Indeed, the *Moose* decision itself referred to such statutes, implicitly acknowledging the distinction between them and the anti-sodomy statute. *See Moose*, 710 F.3d at 165 & n.16 (noting that, unlike the anti-sodomy statute, which had no age restrictions, the Virginia General Assembly had explicitly made it "a felony in Virginia for an adult to solicit sodomy

22

from 'any child under the age of 15 years'" in Va. Code § 18.2-370(A)); *id.* at 167 (noting that "[a] consequence of the *Ayotte* decision could be that a statute closely related to the anti-sodomy provision—for example, Va. Code section 18.2-361(B), which criminalizes incestuous sodomy involving both minors and adults—might well survive review under *Lawrence*, as may that part of section 18.2-361(A) that outlaws bestiality"); *see also Sadler v. Commonwealth*, 667 S.E.2d 783, 785 (Va. 2008) (noting that the purpose of Va. Code § 18.2–370.1, which prohibits an adult from taking indecent liberties with a child under 18 years of age over whom the adult has a custodial or supervisory relationship, "is to protect minors from adults who might exploit certain types of relationships").[11]

Here, Toghill committed the crime of which he stands convicted. His challenge rests solely upon his claim that because we declared the anti-sodomy statute unconstitutional in *Moose*, and § 18.2-374(C)(3) refers to "offense[s] under § 18.2-361," he is entitled to habeas relief. Were we to accept this contorted statutory interpretation, we would effectively eviscerate the clear intent of the Virginia General Assembly to protect children from sexual predators via the General Assembly's minor-specific statutes, even though none run afoul of the liberty interests the Supreme Court protected in *Lawrence*. There is simply nothing in *Lawrence* that restricts state legislatures from prohibiting adults from seeking or engaging in sexual acts with children, or that would require us to facially invalidate convictions under state statutes that were clearly enacted for that purpose.

---

[11] Va. Code § 18.2-370.1, like the statutes of conviction in *Moose* and *Sadler,* also includes "any act constituting an offense under § 18.2-361" as a part of its prohibited acts.

Nor does the anti-sodomy statute serve as a predicate felony for § 18.2-374(C)(3), in the way that it did for the solicitation of felony offense that MacDonald was convicted of under Va. Code § 18.2-29. On the contrary, Va. Code § 18.2-374(C)(3) is a stand-alone statute that merely references the anti-sodomy provision in its delineation of the acts (sodomy and bestiality, along with sexual intercourse) that an adult is constitutionally prohibited from proposing to a minor via electronic communications systems. *See Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("Where one statute adopts the particular provisions of another by specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute." (internal quotation marks omitted)); *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) (same); *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1206 (11th Cir. 2003) (per curiam) ("Incorporation by reference is a form of legislative shorthand; the effect of an incorporation by reference is the same as if the referenced material were set out verbatim in the referencing statute."); *id.* ("We are aware of no authority to the effect that a definition incorporated by reference into another otherwise valid ordinance . . . ceases to be an operative definition just because it derives from a reference ordinance . . . that was declared unconstitutional for reasons having nothing to do with the definition.").[12]

---

[12] Virginia's amended statute, which was passed after our decision in *Moose*, makes this all the more plain. The current version now reads as follows:

It is unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or

Accordingly, we reject Toghill's claim that *Lawrence* requires the invalidation of his conviction under § 18.2-374.3(C)(3) merely because it references the anti-sodomy statute. And we certainly cannot say that the Supreme Court of Virginia's decision to uphold Toghill's conviction for computer solicitation of a minor to engage in sodomy under Va. Code § 18.2-374.3(C)(3), in light of the clear legislative intent, was an unreasonable one.

## VI.

For the foregoing reasons, we affirm the judgment of the district court denying Toghill's petition for habeas relief under 28 U.S.C. § 2254.

AFFIRMED.

---

bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than 15 years of age to knowingly and intentionally . . . *[p]ropose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361.*

Va. Code § 18.2-374.3(C)(3) (emphasis added). As the district court aptly noted, there is simply "no constitutional distinction between Virginia Code § 18.2-374(3)(C) as it has been amended and exists at present, expressly prohibiting an adult from electronically soliciting a child to engage in 'an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361,' from the pre-*MacDonald v. Moose* version of the statute which prohibited electronic solicitation of a child to engage in "'an act of sexual intercourse or any act constituting an offense under § 18.2-361.' Merely referencing § 18.2-361 in § 18.2-374.3(C) does not change the fact that the crime made illegal in § 18.2-374.3(C), and committed by Toghill, is a sex crime directed at children." J.A. 95, n.10.

25