**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1395**

---

JAMILA GRICE, on behalf of herself and all others similarly situated,

       Plaintiff – Appellant,

     v.

INDEPENDENT BANK,

       Defendant – Appellee.

------------------------------

ANDREW BRADT, Professor of Law,

       Amicus Supporting Appellant.

---

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Timothy M. Cain, Chief District Judge. (7:30-cv-01948-TMC)

---

Argued: March 4, 2025                     Decided: August 5, 2025

---

Before DIAZ, Chief Judge, and AGEE and BENJAMIN, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Benjamin wrote the opinion in which Chief Judge Diaz joined. Judge Agee wrote a separate opinion, concurring in the judgement.

---

**ARGUED:** Matthew W.H. Wessler, GUPTA WESSLER LLP, Washington, D.C., for Appellant. Jonathan M. Knicely, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellee. **ON BRIEF:** Sophia Goren Gold, KALIEL GOLD PLLC, Oakland, California; Gregory A. Beck, GUPTA WESSLER LLP, Washington, D.C.; David Matthew Wilkerson, VAN WINKLE LAW FIRM, Asheville, North Carolina, for Appellant. A. Mattison Bogan, Jacob D. Kea, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellee. Andrew Bradt, Professor of Law, BERKELEY LAW, Berkeley, California; Jonathan M. Streisfeld, KOPELOWITZ OSTROW P.A., Fort Lauderdale, Florida, for Amicus Curiae.

---

DEANDREA GIST BENJAMIN, Circuit Judge:

Plaintiff Jamila Grice appeals the district court's denial of her motion for class certification. For the reasons stated below, we reverse.

I.

A.

Grice, a South Carolina resident, sued Defendant Independent Bank ("Independent"), an entity organized under Michigan law, in South Carolina federal district court. Grice contends Independent engaged in three wrongful overdraft fee assessment practices. First, Independent considered customer accounts to be overdrawn even when they had enough money to cover a transaction. Second, Independent generated fees by charging more than one insufficient-funds fee for a single transaction. Third, Independent charged two separate out-of-network fees for a single withdrawal from an out-of-network ATM.

Grice moved to certify nationwide classes for each type of wrongful fee Independent allegedly assessed. Independent opposed the motion, arguing that S.C. Code Ann. § 15-5-150 prohibited Grice from representing nationwide classes. The district court agreed and denied Grice's motion for class certification. Grice timely petitioned for review of the district court's class certification decision. *See* Fed. R. Civ. P. 23(f). We permitted the appeal.

3

II.

We review a district court's class certification decision only for "clear abuse of discretion." *Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975)). "A district court per se abuses its discretion when it makes an error of law or clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

A.

S.C. Code Ann. § 15-5-150 is nicknamed the "Door Closing Statute." *See, e.g.*, *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir. 1980). It "closes" the courthouse doors to certain actions. The law provides:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:
>
> (1) By any resident of this State for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

§ 15-5-150. Section 15-5-150 forbids, for example, a non-South Carolina plaintiff from suing a non-South Carolina corporate defendant for claims which do not "arise[]" out of or concern a "subject . . . situated within" South Carolina. *See id.*

In *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965), this court considered, pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, whether South Carolina federal district courts must apply the Door Closing Statute in diversity actions. *Szantay*, 349 F.2d at 62–63; *see also Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (describing the *Erie* doctrine's command that

4

federal district courts sitting in diversity apply state substantive law and federal procedural law).  The court answered in the affirmative and held that South Carolina federal courts exercising diversity jurisdiction must apply the Door Closing Statute "unless there are affirmative countervailing federal considerations."  *Szantay*, 349 F.2d at 62–64.

Over the following decades, with little to no fanfare, we intermittently reaffirmed this holding.  *See, e.g.*, *Proctor*, 634 F.2d at 739–40 ("In *Szantay* . . . this court held that a South Carolina federal court exercising diversity jurisdiction must apply § 15-5-150 'unless there are affirmative countervailing federal considerations.' " (quoting *Szantay*, 349 F.2d at 64)).

In *Farmer v. Monsanto Corp.*, 579 S.E.2d 325 (S.C. 2003), the Supreme Court of South Carolina reinterpreted the Door Closing Statute.  First, the court overruled its own precedent and held that § 15-5-150 did not concern jurisdiction but regulated the "capacity to sue."  *Id.* at 327–28 (citation omitted); *see Szantay*, 349 F.2d at 62–63 ("It is conceded that South Carolina state courts do not have jurisdiction over a suit brought by a nonresident against a foreign corporation on a foreign cause of action.").  Second, and more important here, the court held that the Door Closing Statute's requirements applied to unnamed class members.  *Farmer*, 579 S.E.2d at 328.  This means that "the class itself cannot include members who would not be able to bring the action in their individual capacities under the door-closing statute."  *Id.*

Many district courts in South Carolina have applied *Farmer* to putative class actions as an extension of *Szantay*.  *See, e.g.*, *Tomczak v. United Servs. Auto. Ass'n*, No. 5:21-cv-01564, 2022 WL 1022647, at *2 (D.S.C. Mar. 31, 2022); *see also Moore v. Equitrans, L.P.*,

5

27 F.4th 211, 220 (4th Cir. 2022) ("When sitting in diversity, a federal court must 'apply the law of the forum state as it is interpreted by the state's highest court.'" (quoting *Adamson v. Columbia Gas Transmission, LLC*, 579 F. App'x 175, 177 (4th Cir. 2014) (per curiam))). For our part, we have not opined on whether and how *Farmer* affects *Szantay*'s command that district courts apply § 15-5-150 in diversity actions absent a countervailing federal interest. *See Ward v. Dixie Nat'l Life Ins. Co.*, 257 F. App'x 620, 628 (4th Cir. 2007) (per curiam) (declining to address "what effect the reinterpreted door-closing statute has on class membership in suits being heard in South Carolina federal courts sitting in diversity").

B.

Independent opposed Grice's motion for class certification. Independent contended that under § 15-5-150 and *Farmer*, nonresidents whose claims arose outside of South Carolina could not be included in Grice's proposed classes. By extension, Independent concluded, if nonresidents were excluded from the proposed classes, then Grice could not meet Rule 23(a)'s numerosity requirement. Grice, of course, disagreed. Also citing *Farmer*, Grice argued that the Door Closing Statute did not apply in federal court. In the alternative, Grice argued that Rule 23 directly conflicted with the Door Closing Statute such that, under *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), the district court should decline to apply § 15-5-150.

The district court sided with Independent, applied the Door Closing Statute to putative class members, and limited membership in Grice's proposed classes to only South Carolina residents. Consequently, the district court held that Grice could not meet Rule

6

23's numerosity requirement and denied Grice's motion for class certification. *See Grice v. Indep. Bank*, No. 7:20-cv-1948, 2024 WL 1287203, at *9, 11–12 (D.S.C. Mar. 26, 2024).

III.

Grice first argues that the Supreme Court of South Carolina's reinterpretation of the Door Closing Statute in *Farmer* "forecloses the law's application in federal court." Appellant's Br. at 17.[1]

In *Farmer*, the Supreme Court of South Carolina held that the Door Closing Statute's requirements applied to class members. *See* 579 S.E.2d at 328. In so ruling, the court rejected the plaintiff's and the trial court's contention that this court's decision in *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993),[2] was "controlling."[3] *Farmer*, 579 S.E.2d at 328. The *Farmer* court then went a step further and rebuffed the idea that the Door Closing Statute even applied in federal court: "By its terms, . . . § 15-5-150 applies only to actions brought in the *circuit court*. The statute clearly does not apply to federal suits . . . ." *Id.* Grice argues that this statement represents an authoritative interpretation of South Carolina law that we are bound to follow. *See*

---

[1] Citations to the parties' briefs refer to the ECF header at the top of each page.

[2] In a footnote in *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993), we declined to apply the Door Closing Statute because of the "countervailing federal policy in favor of consolidating asbestos litigation." *Id.* at 186 n.3.

[3] It is not clear to us why our interpretation of a South Carolina law would be "controlling" on the Supreme Court of South Carolina in this context. Nevertheless, this is what the *Farmer* plaintiff argued.

7

Appellant's Br. at 18 ("The South Carolina Supreme Court's holding in *Farmer* should have ended the issue. The state's highest court 'plainly' has the 'power and prerogative' to 'narrow statutes so as to limit the statute's scope' as it did here." (quoting *Toghill v. Clarke*, 877 F.3d 547, 557 (4th Cir. 2017))).

Grice's argument is a nonstarter. First, the quoted language is not *Farmer*'s holding. It's dictum. *See, e.g.*, *Lennear v. Wilson*, 937 F.3d 257, 273 (4th Cir. 2019) ("Dictum is 'statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding[.]' " (alteration in original) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999))). Second, the quoted language is not an authoritative interpretation of state law, but a view on how *Erie* may apply here. Federal courts, however, decide such questions—not state supreme courts. *Cf. Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) ("It is . . . immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions in any use of those terms unrelated to the specific issue before us. *Erie R. Co. v. Tompkins* was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts."); *Harter v. Vernon*, 101 F.3d 334, 342 (4th Cir. 1996) ("Our holdings on questions of state law do not bind state courts, nor do state court determinations on questions of federal law control us."). If we were to mechanically apply *Farmer*'s suggestion that the Door Closing Statute does not apply in federal court, as Grice urges, we would create an end-run around *Erie*. This cannot be the law.

8

The sole case Grice relies on to support her argument is *Toghill v. Clarke*, 877 F.3d 547 (4th Cir. 2017). Grice argues that *Toghill* stands for the proposition that the Supreme Court of South Carolina had the "power and prerogative" in *Farmer* to "narrow" and "limit" the Door Closing Statute's scope. Appellant's Br. at 18 (quoting *Toghill*, 877 F.3d at 557). Grice therefore concludes that we are " 'bound to accept the state supreme court's construction' " of the Door Closing Statute—namely *Farmer*'s assertion that § 15-5-150 does not apply in federal court. *See id.* (quoting *Toghill*, 877 F.3d at 558). Grice, however, cites *Toghill* completely out of context.

In *Toghill*, the court reviewed the district court's denial of a habeas petition. 877 F.3d at 549. Toghill was convicted under Virginia's anti-sodomy statute. *Id.* at 550. While his appeal was pending, we held that *Lawrence v. Texas*, 539 U.S. 558 (2003), rendered that law unconstitutional. *Id.* In response to Toghill's facial challenge, the Supreme Court of Virginia issued a limiting interpretation of the law in question and upheld Toghill's conviction. *Id.* at 554–56. Toghill then filed a habeas petition, arguing that the Supreme Court of Virginia's narrowing interpretation was contrary to or an unreasonable application of *Lawrence*. *Id.* at 550.

The district court denied the petition and this court affirmed. *See id* at 556. We observed that where "the state court *has* provided an authoritative, narrowing construction of a state statute, the 'federal court *must* . . . consider [the] limiting construction that a state court . . . has proffered' when evaluating a facial challenge." *Id.* at 558 (alterations in original) (quoting *Village of Hoffman Ests. v. The Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982)); *see id.* at 557 ("Federal courts 'have long respected the State Supreme

9

Courts' ability to narrow state statutes so as to limit the statute's scope to unprotected conduct.' " (quoting *Osborne v. Ohio*, 495 U.S. 103, 120 (1990))).

*Toghill* is inapposite. Grice is not bringing a facial challenge to a state law. Nor did the Supreme Court of South Carolina in *Farmer* attempt to "narrow" the Door Closing Statute to avoid a constitutional conflict. It just expressed its *disagreement* with our application of federal law—the *Erie* doctrine. *See Farmer*, 579 S.E.2d at 558. *Farmer* therefore does not settle the question before us.

IV.

Grice next argues that the Door Closing Statute and Federal Rule of Civil Procedure 23 conflict such that, under *Shady Grove*, Rule 23 displaces the Door Closing Statute entirely.

A.

"[T]he Supreme Court has provided us with a well-established, two-step framework for mediating any potential conflict" between a Federal Rule of Civil Procedure and a state rule of law. *See Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021) (first citing *Hanna v. Plumer*, 380 U.S. 460 (1965); and then citing *Shady Grove*, 559 U.S. 393). "We first ask whether the Federal Rules 'answer[] the question in dispute.' " *Id.* at 518–19 (alteration in original) (quoting *Shady Grove*, 559 U.S. at 398). "If the Federal Rules do answer that question, then they govern, notwithstanding [the Door Closing Statute]—unless, at step two of the analysis, we find the relevant Federal Rule[] invalid under the Constitution or the Rules Enabling Act." *Id.* at 519 (first citing *Shady Grove*, 559 U.S. at 398; and then

10

citing *Hanna*, 380 U.S. at 471) (cleaned up). "But if there is a valid Federal Rule that answers the 'same question' as the [Door Closing Statute], then our work is done, and we apply the Federal Rules without wading into the 'murky waters' of *Erie* . . . and its distinct choice-of-law rules." *Id.* (quoting *Shady Grove*, 559 U.S. at 398–99).

Independent claims that we do not reach *Shady Grove* at all because our decision in *Szantay* binds us. Appellee's Br. at 25. We disagree. In *Szantay*, this court considered—under *Erie*—whether the Door Closing Statute applies in diversity actions. *Szantay*, 349 F.2d at 63–64. *Szantay* did not consider whether the Door Closing Statute conflicted with a federal procedural rule. That is the separate (and preliminary) *Shady Grove* question we face today.

Because *Szantay* answered an *Erie* question, it cannot bind us with respect to the *Shady Grove* question. And because *Szantay* did not consider a conflict with a federal procedural rule, it cannot permit (much less command) us to skip over the analysis *Shady Grove* requires.

With that, we turn to *Shady Grove*.

## B.

In *Shady Grove*, the Supreme Court considered whether a New York plaintiff could file a federal class action lawsuit for statutory penalties despite a state statute that prohibited "class actions in suits seeking penalties or statutory minimum damages." 559 U.S. at 396 (citing N.Y. Civ. Prac. Law Ann. § 901 (West 2006)). The Court held that the New York statute did not trump Rule 23.

11

The Court reasoned that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified [class-action] criteria to pursue his claim as a class action." *Id.* at 398. Put differently, "Rule 23 provides a one-size-fits-all formula for deciding the class-action question." *Id.* at 399. Given that the New York law "attempt[ed] to answer the same question" as Rule 23—when a class action could be maintained—Rule 23 controlled. *See id.* at 399–401 (noting that the New York law "prevents the class actions it covers from coming into existence at all").

In sum, the Court held that Rule 23 "explicitly" "empowers a federal court to certify a class in each and every case" where Rule 23's criteria are met. *Id.* at 399 (cleaned up); *id.* at 399–400 (emphasizing that "may" in Rule 23 places discretion in the plaintiff's hands—"[h]e may bring his claim in a class action if he wishes"); *id.* at 406 ("Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met. We cannot contort its text, even to avert a collision with state law that might render it invalid." (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980))).

## C.

We turn to Grice's case.

And we consider whether Rule 23 answers the same question as the Door Closing Statute: when may a class action be maintained? "For these purposes, the Federal Rules may 'answer' the question without speaking to it expressly." *Pledger*, 5 F.4th at 518 (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)). If the Rule's scope "is 'sufficiently broad' either to 'cause a direct collision' with [the Door Closing Statute] or

12

'implicitly, to control the issue,' then the Federal Rules govern notwithstanding state law." *Id.* (quoting *Burlington N. R.R. Co.*, 480 U.S. at 4–5); *see also Shady Grove*, 559 U.S. at 399 (finding that Federal Rule providing "one-size-fits-all formula" displaces more specific state rule addressing same question).

The federal standard for maintaining a class action is Federal Rule of Civil Procedure 23.    Rule 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a).   "[T]he class action must [also] fall within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).   Where a plaintiff meets these requirements, "Rule 23 permits [the] class action[] . . . and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements."  *Shady Grove*, 559 U.S. at 401.   The Door Closing Statute, however, requires more.   In South Carolina state court, a plaintiff must meet the requirements of South Carolina Rule of Civil Procedure 23(a) (similar to those of Rule 23) *and* the Door Closing Statute—for herself and each class member. *See Farmer*, 579 S.E.2d at 328.

Requiring that Grice satisfy Rule 23 *and* the Door Closing Statute to maintain her putative class action violates *Shady Grove*. *See* 559 U.S. at 399, 401 (holding that "a State cannot limit [Rule 23's 'one-size-fits-all formula'] by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements"); *see also id.* 399–400 ("Allstate asserts that Rule 23 neither explicitly nor implicitly empowers a federal court 'to certify a class in each and every case' where the Rule's criteria are met.

13

But that is *exactly* what Rule 23 does: It says that if the prescribed preconditions are satisfied '[a] class action *may be maintained*'—not '*a class action may be permitted.*' " (cleaned up)).  "[F]airly construed," Rule 23 is broad and permits a representative to sue on behalf of a class if its requirements are met.  *See Burlington N. R.R. Co.*, 480 U.S. at 5; *Shady Grove*, 559 U.S. at 399 ("Rule 23 provides a one-size-fits-all formula for deciding the class-action question.").  Rule 23, as interpreted by *Shady Grove*, and the Door Closing Statute directly conflict, so Rule 23 alone controls.

Independent struggles to fight this straightforward conclusion.  Independent acknowledges that the Door Closing Statute bars nationwide class actions.  Nevertheless, it contends that Rule 23 and the Door Closing Statute do not conflict.  To Independent, the Door Closing Statute regulates the "eligibility of . . . class members to bring suit in [either state or federal court in] South Carolina."  Appellee's Br. at 33.  Rule 23, on the other hand, permits a representative "to sue *on behalf* of a class if certain requirements are met," but *does not* "grant a class representative the right to represent a nationwide class."  *Id.* at 32 (emphasis added).

To state Independent's argument is to refute it.  Independent asks us to hold that Rule 23 permits a class representative to maintain suit "on behalf of [the] class" at the same time that the Door Closing Statute regulates—and in this case would *forbid*—the class's very participation.  Under *Shady Grove*, we cannot accept this reasoning.  Rule 23 "implicitly . . . control[s]" the scope of the prospective class, "leaving no room for the operation of" the Door Closing Statute.  *See Burlington N. R.R. Co.*, 480 U.S. at 5 (first quoting *Walker*, 446 U.S. at 749–50 & n.9; and then citing *Hanna*, 380 U.S. at 471–72).

14

Rule 23 leaves no room because it "permits all class actions that meet its requirements [to proceed], and a State cannot limit that permission" by "impos[ing] additional requirements"—as the Door Closing Statute does. *See Shady Grove*, 559 U.S. at 401.

### D.

This leaves the step-two question: whether Rule 23 is "ultra vires," "that is, outside Congress's constitutional rule making power or the statutory authorization provided by the Rules Enabling Act."[4] *Pledger*, 5 F.4th at 520–21 (first quoting *Shady Grove*, 559 U.S. at 398–99; and then citing *Hanna*, 380 U.S. at 471).

A federal rule is constitutionally valid if it is "rationally capable of classification" as procedural. *Burlington N. R.R. Co.*, 480 U.S. at 5 (quoting *Hanna*, 380 U.S. at 472). And it is valid under the Rules Enabling Act if it does not "abridge, enlarge or modify any substantive right." *Id.* (quoting 28 U.S.C. § 2072(b)). "The Federal Rules of Civil Procedure enjoy 'presumptive validity under both the constitutional and statutory constraints,' and the Supreme Court has '[s]o far . . . rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act.' " *Pledger*, 5 F.4th at 521 (first quoting *Burlington N. R.R. Co.*, 480 U.S. at 6; and then quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015)).

Independent does not dispute Rule 23's validity under the Constitution. Instead, it argues that the rule runs afoul of the Rules Enabling Act. But on that point, the *Shady*

---

[4] Of course, if we were to conclude that Rule 23 is invalid, the Door Closing Statute wouldn't automatically apply. Instead, we'd "wade into *Erie*'s murky waters." *Shady Grove*, 559 U.S. at 398. Fortunately, we have no need to do so today, given our conclusion that Rule 23 is valid.

*Grove* majority fractured: Justice Stevens parted ways with Justice Scalia (now writing for a plurality) on the proper approach for deciding whether a federal rule abridges, enlarges, or modifies a substantive right. Some circuits have concluded that Justice Stevens's concurrence, as the narrowest opinion supporting the judgment, controls. *E.g.*, *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016) (applying "*Marks* rule," *Marks v. United States*, 430 U.S. 188, 193 (1977)). We have not addressed the question. And Independent has ignored the issue altogether. But because Rule 23 is valid under either approach, we do not decide which opinion controls.

Independent argues that Rule 23 is invalid for two reasons. First, Independent contends that applying Rule 23 enlarges substantive rights and encourages forum shopping. *See* Appellee's Br. at 34 (arguing that Rule 23 "permit[s] non-South Carolina residents to circumvent the Door Closing Statute" and bring cases in South Carolina federal district court which they could not bring in South Carolina state court). Second, Independent argues that Rule 23 abridges its substantive rights by permitting "out-of-state plaintiffs who have not suffered injury in" South Carolina to sue it in South Carolina federal district court. *See id.* These arguments are unconvincing.

Under the plurality's view, "[t]he test" is not whether Rule 23 "affects [Independent's] substantive rights." *See Shady Grove*, 559 U.S. at 407 (plurality opinion). Nor is it whether Rule 23, to some degree, "produce[s] forum shopping." *Id.* at 415–16 ("The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping. To hold otherwise

16

would be to 'disembowel either the Constitution's grant of power over federal procedure' or Congress's exercise of it." (quoting *Hanna*, 380 U.S. at 473–74)).

In other words, "[w]hat matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* at 407 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).

The rule at issue here—Rule 23—is procedural. It "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *See id.* at 408. Or said slightly differently, "insofar as [Rule 23] allows willing plaintiffs to join their separate claims against the same defendants in a class action," it "falls within [the Rules Enabling Act]'s authorization" and is valid. *See id.*

And we reach the same conclusion under Justice Stevens's approach. The Door Closing Statute is procedural and not "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J., concurring in part and concurring in the judgment).

Accordingly, Rule 23 governs Grice's claims, and the district court erred by applying the Door Closing Statute. *See Pledger*, 5 F.4th at 519 ("[I]f there is a valid Federal Rule that answers the 'same question' as the [Door Closing Statute], then our work is done, and we apply the Federal Rules without wading into the 'murky waters' of *Erie* . . . and its distinct choice-of-law rules." (quoting *Shady Grove*, 559 U.S. at 398–99)).

17

V.

For the reasons stated above, we reverse the district court's order denying Grice's motion for class certification and remand for further proceedings.

*REVERSED AND REMANDED*

AGEE, Circuit Judge, concurring in the judgment:

I agree with the majority's end result here and therefore concur in the judgment. But I would reach that result in a way that better adheres to the respect we owe the Supreme Court of South Carolina's interpretation of its own state's law. So out of principles of comity, I write separately.

As the majority ably points out, the question presented here is whether South Carolina's Door-Closing Statute forecloses certification of a class in federal court under Federal Rule of Civil Procedure 23. The Door-Closing Statute provides:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:
>
> (1) By any resident of this State for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150.

Whenever we, as a federal court, are asked to apply a state law, our base obligation is to apply that law as the forum state's highest court has interpreted it. *City of Huntington v. AmerisourceBergen Drug Corp.*, 96 F.4th 642, 647 n.10 (4th Cir. 2024); *see Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court."). And according to the Supreme Court of South Carolina, the Door-Closing Statute, "[b]y its terms, . . . applies

19

only to actions brought in the *circuit court*.[1]  The statute clearly does not apply to federal suits . . . ." *Farmer v. Monsanto Corp.*, 579 S.E.2d 325, 328 (S.C. 2003) (emphasis in original).

The Supreme Court of South Carolina has told us that the Door-Closing Statute's language means that it applies only in South Carolina state circuit courts, not in any federal court. That should end our inquiry.

The majority agrees that the Door-Closing Statute does not foreclose certification of a class in federal court, but only after relying on the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). That impulse is strong, but it seems to me incorrect. Through *Farmer*'s interpretation of the Door-Closing Statute's language, the Supreme Court of South Carolina obviated any need to choose between state and federal law—and therefore any need to apply *Shady Grove*.

Like the basic principles behind the *Erie* Doctrine, *Shady Grove*'s two-step framework comes in when it is necessary to "mediat[e] any potential conflict" between applicable federal and state rules. *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021) (first citing *Hanna v. Plumer*, 380 U.S. 460 (1965); and then citing *Shady Grove*, 559 U.S. at 393); *see* 19 *Wright & Miller's Federal Practice & Procedure Jurisdiction* § 4501 (3d ed. 2025) (explaining that the *Erie* doctrine "help[s] define which law—federal or state—is to be applied to any given issue in federal court"). Put simply, *Shady Grove* informs our

---

[1] In South Carolina's state judicial system, "[t]he Circuit Court is the State's court of general jurisdiction." South Carolina Judicial Branch, *Circuit Court* (last visited July 21, 2025), https://www.sccourts.org/courts/trial-courts/circuit-court/ [https://perma.cc/739X-JSU3].

decision making *only* when there is a threshold conflict between potentially applicable state and federal law.

That triggering conflict seems absent here. If a state law, by its own limiting language, does not apply to federal court proceedings, there would not seem to be a choice as to whether to apply it or a corresponding federal rule. Rather, any potential conflict between the Door-Closing Statute and federal law is of our own artificial creation; South Carolina's legislature wrote a law that "applies only to actions brought in the *circuit court*." *Farmer*, 579 S.E.2d at 328 (emphasis in original). The majority's position here is understandable—"the interplay of federal and state law" under *Erie*'s shadow involves "wonky stuff." *Pledger v. Lynch*, 5 F.4th at 527 (Quattlebaum, J., concurring). But we do not need to get into the wonky particularities of esoteric legal doctrine here because the Supreme Court of South Carolina obviated any potential threshold conflict between state and federal law in *Farmer*.

The majority says that conclusion is a "nonstarter" and "cannot be the law," but I'm not convinced that either of its proffered reasons for that proposition—that *Farmer*'s statutory interpretation was (1) dictum that we should ignore, or (2) not authoritative because it is similar to an *Erie* question—allow us to ignore our general deference to a state's highest court. *Ante* at 8.

First, I disagree that the Supreme Court of South Carolina's interpretation of the Door-Closing Statute in *Farmer* is dictum. In *Farmer*, that court took an appeal to consider whether the Door-Closing Statute "limit[s] a class action against a foreign corporation in state court," and held it did. 579 S.E.2d at 327. In reaching that conclusion, the court had

21

to deal with our decision opining otherwise in *Central Wesleyan College v. Kaiser Gypsum Co.*, 6 F.3d 177 (4th Cir. 1993), after the trial court and the plaintiffs relied on it. The Supreme Court of South Carolina held the lower court's reliance on *Central Wesleyan* was wrong because our precedent was "not controlling." 579 S.E.2d at 328. Fair enough. Our decisions are never controlling on any South Carolina state court as to matters of state law. But tellingly, the court went on to explain *why* reliance on a federal case's interpretation of the Door-Closing Statute was misplaced: "[b]y its terms, . . . § 15–5–150 applies only to actions brought in the *circuit court*. The statute clearly does not apply to federal suits and the Fourth Circuit's ruling on its non-application in that case is irrelevant." *Id.* (emphasis in original).

We define dictum as "a 'statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'" *Payne v. Taslimi*, 998 F.3d 648, 654–55 (4th Cir. 2021) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999)).

The Supreme Court of South Carolina's interpretation of the Door-Closing Statute does not fit that definition. The statement's importance to the opinion is plain—to explain why the lower court erred in relying on *Central Wesleyan*. *Farmer*, 579 S.E.2d at 328. There is no reason to think it did not receive the "full and careful consideration" of the South Carolina Supreme Court. *Payne*, 998 F.4th at 654. To the contrary, the statement bears the hallmarks of a brief, but adequately thorough, exercise of statutory interpretation. As jurists, we regularly add emphasis to a statute's language as a means of helping illustrate

22

that a statute says what we find it to mean. That rhetorical tool is hardly used for flippant observations. The South Carolina Supreme Court emphasized the term 'circuit court' to show that its inclusion in § 15-5-150 cabined the statute's application to state circuit courts, or "[b]y its terms," the Door-Closing Statute "clearly does not apply to federal suits." *Farmer*, 579 S.E.2d at 328. A concise interpretation does not mean it was made without adequate consideration. For those reasons, the state Supreme Court's interpretation of the Door-Closing Statute in *Farmer* is not dictum.[2]

Second, respecting the Supreme Court of South Carolina's interpretation in *Farmer* here would not "create an end-run around *Erie*." *Ante* at 8. It is, of course, true that the Supreme Court of South Carolina's characterization of the Door-Closing Statute as substantive or procedural would not control an *Erie* analysis because such questions are reserved for federal courts. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945). But that is not what *Farmer* did. Characterizing a statute and interpreting what it means are different endeavors. While it may be a federal courts' province to *characterize* a law for *Erie* purposes in deciding which law applies to the case before them, it is emphatically the Supreme Court of South Carolina's prerogative to determine what their state's law *means*.

---

[2] Even if that statement by the South Carolina Supreme Court were dictum, that would not mean we could dismiss it outright. Our precedent compels us to use "well considered dicta" to predict how state courts would construe a statute. *Priv. Mortg. Inv. Servs.*, 296 F.3d at 312. Indeed, our state-level counterpart thought it elementary that courts should be "reluctant to disregard" dictum. *Sherlock Holmes Pub, Inc. v. City of Columbia*, 697 S.E.2d 619, 621 (S.C. Ct. App. 2010). For the same reasons explained above, *Farmer*'s interpretation of the Door-Closing Statute was at the very least "well considered." *Priv. Mortg. Inv. Servs.*, 296 F.3d at 312.

*See Priv. Mortg. Inv. Servs.*, 296 F.3d at 312. *Farmer* involved the latter, as the court construed the Door-Closing Statute's language as effectively cabining its application to cases brought in state circuit courts. 579 S.E.2d at 328. It does not appear to be an attempt to apply *Erie* that we may disregard. *Ante* at 8.

Because we are bound by the Supreme Court of South Carolina's interpretation of a South Carolina statute, I would hold that the Door-Closing Statute does not foreclose certification of a class in federal court because that statute only applies in state circuit courts, not federal district courts, under *Farmer v. Monsanto Corp.*, 579 S.E.2d at 328. That is sufficient basis to reverse, and it's unnecessary to opine on additional principles to reach that result. I therefore concur in the judgment.

24